UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CRIMINAL ACTION NUMBER: 3:11CR-00127-JHM**

**UNITED STATES OF AMERICA**                                                             **PLAINTIFF**

**v.**

**PEDRO BELLO,**
**CARIDAD BELLO, and**
**JUAN HERNANDEZ**                                                               **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Pedro Bello's motion to suppress [DN 69]; and Defendant Juan Hernandez's motion to adopt Co-Defendant's motion to suppress [DN 77]. Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

Defendants Pedro Bello, Caridad Bello and Juan Hernandez were indicted on October 3, 2012 on five counts. The Superseding Indictment [DN 35], in Count 1, alleges that between April 5, 2007 and December 1, 2009, Defendants conspired to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. The United States contends that the purpose of the conspiracy was a scheme to defraud the Commonwealth of Kentucky of excise tax revenues through the use of a tobacco diversion invoicing scheme. According to the Superseding Indictment, the Defendants created the impression that a tobacco distributor company was purchasing cigarettes from GT Northeast of St. Louis, a non-licensed, out of state company that was operated by Defendants Caridad Bello and Juan Hernandez. In actuality, the tobacco distributor company's cigarette orders were being filled by GT Northeast located in Sellersburg, Indiana, and later Louisville, Kentucky, a Kentucky excise tax licensee, operated by Pedro Bello. Count 1 charges that the scheme permitted Defendant Pedro

Bello to avoid paying approximately $2,000,000 in Kentucky excise taxes on the purchase of cigarettes valued at approximately $12,500,000.

Counts 2 through 5 of the Superseding Indictment charge the Defendants with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). In connection with the conspiracy to commit wire fraud, the United States alleges that the Defendants conducted four wire transfers of funds from GT Northeast of St. Louis bank accounts to GT Northeast bank accounts.

## II. DISCUSSION

Defendant Pedro Bello has filed a motion to suppress all fruits, items seized and evidence derived as a result of the searches at 2520 Ampere Drive, Jeffersontown, Kentucky pursuant to warrants issued December 7, 2009 and January 19, 2010. Defendant Juan Hernandez has also filed a motion to adopt Defendant Pedro Bello's motion to suppress arguing that all the arguments made by Bello are applicable to a search of Defendant Hernandez's business premises located at 1003 Hanley Industrial Court, St. Louis, Missouri.

**A. Motion to Suppress Evidence from Search of 2520 Ampere Drive**

The description of the property involved in the both search warrants of 2520 Ampere Drive describe the property as:

> A large warehouse with a facade of glass, green siding and red/orange trim. The building's roof rises to a peak in the middle. The front of the building also has three main entry double doors covered by green sided awnings. The number "2520" is written in white lettering on the upper left corner of the front of the building (when facing the front). The rear of the building is accessible through the south side of the parking lot. The rear of the building has green siding similar to the front. It has loading docks and several garage style doors. The address of this location is 2520 Ampere Dr., Jeffersontown, KY, 40299.

Defendant Pedro Bello states that because of this description, the warrants provided only for a search of the warehouse, not the attached office space. Because a search of the attached office was outside the scope of the warrant, Defendant Pedro Bello argues that any documentation or information

obtained from the office during the searches must be suppressed. Describing the building, Defendant Bello states that the offices are in the front of the building in question, with the warehouse in the rear, and the two areas are closed off and separate from one another. He contends that he has standing to object to a search of his office. (Def.'s Mot. to Suppress, 6 [DN 69] (citing Macusi v. DeForte, 392 U.S. 364, 369 (1968))). Additionally, Defendant Bello states that the warrant and application do not set forth any violation of federal law and the Magistrate Judge erred in issuing the warrants.

In response, the government states that both search warrants included descriptions of the items that were to be searched, listing "[b]usiness and/or personal records of cigarette or tobacco product transactions and financial records and other records or documents reflecting diversion activity." (Exhibits 1 and 3 [DN 83].) A diagram of the building attached to a warrant is provided by the United States which included the office space. The government argues that the agents searched 2520 Ampere Drive within the search warrant, and the warehouse and the office were all part of the same building and business. (U.S. Response, 4 [DN 83] (citing United States v. Wright, 468 F.2d 1184 (6th Cir. 1972)).) Additionally, the government points to a Sixth Circuit case which "found that the search of an office area of a store was not improper, even though the office area was located at a different address than the store." (Id. [DN 83] (citing United States v. Lemmons, 527 F.3d 662 (6th Cir. 1975)).) The government states that the federal agents who searched 2520 Ampere Drive acted reasonably and with good faith in reliance of the warrant, and the evidence should not be excluded.

"The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" Maryland v. Garrison, 480 U.S. 79, 84 (1987). "[T]he Fourth Amendment safeguard is

designed to require a description which particularly points to a definitely ascertainable place so as to exclude all others." Lemmons, 527 F.2d at 666. The Sixth Circuit has articulated that "the test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." United States v. Gahagan, 865 F.2d 1490, 1496 (6th Cir. 1989).

In support of his argument, Defendant Bello cites to United States v. King in which the defendant filed a motion to suppress evidence found in the basement of a two-family dwelling in which the defendant lived. 227 F.3d 732 (6th Cir. 2000). In that case, the Sixth Circuit pointed out that "[f]or purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses." Id. at 750-51. The Sixth Circuit concluded that the basement was not the common area of the apartment building since it was only a two-family dwelling, not a multi-unit, and found that the officer exceed the scope of the warrant by searching the basement.

In contrast, the government pointed out, the Sixth Circuit has held that a search warrant describing "the premises known as The New Plaza Lounge, 725 Monmouth Street, Newport, Kentucky, being a three-story red brick building," included a one-story cement block structure that was attached to the three-story red brick building as part of the same business. United States v. Wright, 468 F.2d 1184, 1185 (6th Cir. 1972). Additionally, in United States v. Lemmons, the Sixth Circuit held that a warrant was sufficiently definite to authorize the search of the entire store, "Imported Fashions of Tomorrow," which occupied two addresses, both 9300 and 9304 Woodward Avenue, even though the warrant only listed 9300 Woodward Avenue. 527 F.2d at 665-66. In its

reasoning, the Sixth Circuit noted that in a previous case it upheld the search of a two-story house after it "observed that appellant was the sole lessee listed on the rental agreement, that the utilities for both floors were contracted for in appellant's name, that he acknowledged the premises to be his residence and that there was no externaal indication that the house might be divided into more than one living unit." Id. at 666 (citing United States v. Jordan, 349 F.2d 107 (6th Cir. 1965).) As the store was the only business occupying the two addresses, the search warrant was upheld.

In the case at present, however, the warrant was executed on one business with one address. The description uses the word "warehouse" once, but then continues to refer to the premises as a "building." The search warrant describes both the front of the building, where the office is located, and the rear of building. The location was described as a whole with particularity, including details of facade and colors of the trim and siding. Furthermore, there was no reasonable probability that another premise might be mistakenly searched as the building consisted of one business with one address. The Court rejects Defendant Bello's argument that the offices were not included in the search warrant. The warrants described the premises both as a warehouse and a building located at a single address. Therefore, the Court finds that the search did not exceed the scope of the warrant. As to the argument that the Magistrate Judge erred when issuing the warrants, the Court has rejected the argument that the facts do not set forth a violation of any federal crime in a previous opinion.

### B. Defendant Hernandez's Motion to Adopt the Motion to Suppress

In his motion, Defendant Hernandez states that the arguments made by Defendant Bello are equally applicable to the search of Defendant Hernandez's business premises located at 1003 Hanley Industrial Court, St. Louis, Missouri. As the Court has found Defendant Bello's arguments without merit, it will only address Defendant Hernandez's argument that the search warrant contains statements of fact and/or law that are either erroneous or, even if true, failed to provide the

magistrate with substantial basis for determining the existence of probable cause.

Defendant Hernandez argues that the agents were engaging in a fishing expedition and did not expect to discover any new evidence. He further argues that the affidavit in support of the search warrant did not contain enough information to warrant probable cause. As an example of erroneous conclusions of law, Defendant Hernandez points to page 14 of the affidavit attached to the search warrant which states "Per Kentucky State Statute, GT Northeast could only sell stamped cigarettes to his Kentucky customers." Defendant Hernandez argues that this is inadequate citation of Kentucky law and is a conclusory statement. He states that all of the federal violations "alleged in the affidavit depend for their sufficiency on the underlying state law violation alleging fraud." (Def.'s Mot. to Adopt, 4 [DN 77].) Lastly, Defendant Hernandez contends that there are no individualized facts or allegations that he knew of the legal nature of the alleged scheme, only allegations that the business entity or his wife knew.

The government first responds stating that Defendant Hernandez's arguments are not supported by law. The United States argues that the affidavit provides a detailed description of GT Northeast of St. Louis' involvement in the wire fraud violations, including details from an interview with an employee who worked in accounts receivable at GT Northeast in Louisville. Additionally, the United States contends that "the Sixth Circuit does not require a search warrant affidavit to describe every element of each offense alleged, much less cite specific state tax statutes that are summarized elsewhere in the affidavit." (U.S.'s Response, 5 [DN 86] (citing United States v. Giacalone, 541 F.2d 508 (6th Cir. 1976)).)

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, . . . ." U.S. Const. Amend. IV. To determine whether probable cause for a search exists, a magistrate judge "make[s] a practical, common-sense decision whether,

given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Reviewing courts look only at "whether the totality of the circumstances [described in the affidavit] supports a finding of probable cause." United States v. Woosley, 361 F.3d 924, 926 (6th Cir. 2004). As long as the "magistrate had a 'substantial basis for ... concluding' that a search would uncover evidence of wrongdoing," the warrant will be upheld." Gates, 462 U.S. at 236 (internal citations omitted).

The affidavit attached to the search warrant contains a detailed summary of the investigation and the implication of the GT Northeast St. Louis business. Broadly stated, the affidavit states that the investigators believed that Defendant Pedro Bello had committed violation of the Contraband Cigarette Trafficking Act, mail fraud and wire fraud. From evidence obtained in the investigation, GT Northeast St. Louis was identified as using wire systems to further the scheme to defraud Kentucky of excise taxes. The Court disagrees that all federal violations alleged in the affidavit depended on the underlying state law violation and has discussed this more in a previous Order dated May 13, 2013. Furthermore, the Supreme Court has identified that there is a difference between proving guilt and the probable cause needed for a search warrant. See United States v. Ventresca, 380 U.S. 102, 108 (1965). Affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." Id. at 108. The federal agent conducting the investigation is not expected to know the state tobacco tax statutes. The affidavit did, however, provide a substantial basis that a search would uncover evidence of wrongdoing. It cited to the federal Trafficking in Contraband Cigarettes statute and an interview with an employee of GT

Northeast who discussed the ordering, billing and shipping between GT Northeast and GT Northeast of St. Louis of cigarettes which did not have Kentucky State Excise Tax stamps. As an affidavit is permitted to be based on hearsay, the Court holds that the affidavit provided probable cause for a valid search.

The Court also rejects Defendant Hernandez's argument that because the affidavit does not contain individualized facts or allegations against Defendant Hernandez, the evidence should be suppressed. The affidavit was in support of a search warrant of the business located at 1003 Hanley Industrial Court, St. Louis, Missouri 63144. As the Court stated above, the search warrant affidavit contained probable cause to search the GT Northeast St Louis facility, and the agents did not exceed their scope in the execution of the warrant. Therefore, the search and any evidence seized during the search are valid. Whether Defendant Hernandez was mentioned in the affidavit of the search warrant or not does not impact the validity of the search warrant. Therefore, the Court denies the motion to suppress.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Pedro Bello's motion to suppress [DN 69] is **DENIED**; and Defendant Juan Hernandez's motion to adopt Co-Defendant's motion to suppress [DN 77] is **DENIED**.

*[Signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

May 13, 2013