UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CRIMINAL ACTION NUMBER: 3:11CR-00127-JHM**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| **v.** | |
| **PEDRO BELLO,** **CARIDAD BELLO, and** **JUAN HERNANDEZ** | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Pedro Bello's motion to dismiss [DN 68]; Defendant Juan Hernandez's motion to dismiss [DN 76]; and Defendant Juan Hernandez's motion to adopt Co-Defendant's motion to dismiss [DN 77]. A hearing was held April 24, 2013. Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

Defendants Pedro Bello, Caridad Bello and Juan Hernandez were indicted on October 3, 2012 on five counts. The Superseding Indictment [DN 35], in Count 1, alleges that between April 5, 2007 and December 1, 2009, Defendants conspired to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. The United States contends that the purpose of the conspiracy was a scheme to defraud the Commonwealth of Kentucky of excise tax revenues through the use of a tobacco diversion invoicing scheme. According to the Superseding Indictment, the Defendants created the impression that a tobacco distributor company was purchasing cigarettes from GT Northeast of St. Louis, a non-licensed, out of state company that was operated by Defendants Caridad Bello and Juan Hernandez. In actuality, the tobacco distributor company's cigarette orders were being filled by GT Northeast located in Sellersburg, Indiana, and later Louisville, Kentucky, a Kentucky excise tax

licensee, operated by Pedro Bello. Count 1 charges that the scheme permitted Defendant Pedro Bello to avoid paying approximately $2,000,000 in Kentucky excise taxes on the purchase of cigarettes valued at approximately $12,500,000.

Counts 2 through 5 of the Superseding Indictment charge the Defendants with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). In connection with the conspiracy to commit wire fraud, the United States alleges that the Defendants conducted four wire transfers of funds from GT Northeast of St. Louis bank accounts to GT Northeast bank accounts.

## II. DISCUSSION

Defendant Pedro Bello has filed a motion to dismiss arguing that the Superseding Indictment fails to allege a violation of an underlying state or federal law, and therefore the conspiracy to commit wire fraud and money laundering claims must fail. Defendant Juan Hernandez has also filed a motion to dismiss the Superseding Indictment for selective prosecution and vindictive prosecution. Defendant Hernandez has filed a motion to adopt Defendant Pedro Bello's motion to dismiss.

**A. Motion to Dismiss for Failure to Allege an Underlying State or Federal Law**

Defendant Pedro Bello argues that the United States has failed to make clear what Kentucky or federal law the theory of conspiracy to commit wire fraud and money laundering is based on. Because there is no underlying criminal activity, Defendant Pedro Bello reasons there is no basis for either charge. He acknowledges that Kentucky cigarette excise tax laws are located in KRS § 138, but no reference is made to either Kentucky law or the Federal Contraband Cigarette Trafficking Act. Additionally, Defendant Pedro Bello is concerned about the federal-state balance at issue stating that Kentucky has regulated the sale and taxation of tobacco and has not made Defendant Pedro Bello's alleged practice unlawful, and the United States should not intervene in Kentucky's regulatory scheme.

In response, the United States argues that a separate state or federal violation of law is not required to prove wire fraud and conspiracy to commit wire fraud. The government states that a wire fraud charge requires it prove three elements: "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." United States v. Daniels, 329 F.3d 480, 485 (6th Cir. 2003). The United States contends that the language of 18 U.S.C. § 1343 does not require a separate violation of state or federal law. (U.S.' Response to Pedro Bello's Mot. to Dismiss, 5-6 [DN 81] (citing United States v. Green, 592 F.3d 1057 (9th Cir. 2010); United States v. Frost, 321 F.3d 738 (8th Cir. 2003); United States v. Scallion, 533 F.2d 903 (5th Cir. 1976))). According to the United States, the Superseding Indictment alleges each of the three elements: the Defendants conspired to defraud Kentucky of tax revenue from cigarettes through an invoicing scheme using wire communications. It states that "[t]he Supreme Court has specifically held that a government's right to collect excise taxes constitutes property under wire fraud." (Id. at 8 [DN 81] (citing Pasquantino v. United States, 544 U.S. 349 (2005))). During oral argument, the government cited to Kentucky statute's definition of contraband cigarettes, which are "any untax-paid cigarettes held, owned, possessed, or in control of any person . . . are contraband and subject to seizure and forfeiture." KRS § 138.165(1). As to the money laundering charges, the United States agrees that a money laundering charge requires a specified unlawful activity, and states that the conspiracy to commit wire fraud is the unlawful activity.

> Under 18 U.S.C. § 1343, wire fraud is described as:
>
> [H]aving devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice[.]

As the parties pointed out, the government must prove three elements: "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." Daniels, 329 F.3d at 485. "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." U.S. v. Jamieson, 427 F.3d 394, 402 (6th Cir. 2005).

Defendant Pedro Bello's main argument is that there is no evidence to support the third element, an intent to deprive a victim of money or property. Defendant Bello argues that he has not broken any state law, there is no excise tax due and thus, he has not deprived the Commonwealth of Kentucky any property. KRS 138.146(2) requires the payment of tax to be affixed to each cigarette package by a nonresident wholesaler prior to the introduction or importation of the cigarettes into Kentucky. Bello argues that GT St. Louis, a nonresident wholesaler took "title" to the cigarettes, but never took physical possession of them. Because the cigarettes physically remained in Kentucky, GT Northeast of St. Louis, never "introduced" or "imported" the cigarettes into Kentucky and thus, the obligation to purchase tax stamps never was triggered.

The Court disagrees. The statutory scheme seems clear that excise taxes are due on cigarettes once those cigarettes come into the state. As the government stated during oral argument, KRS 138.165 provides that all untax-paid cigarettes held, owned or controlled by any person are contraband. Under Kentucky state law, as soon as a wholesaler receives the cigarettes, he is to purchase stamps within forty-eight hours. KRS 138.146(2). There is no dispute that GT Northeast did not purchase the stamps. It appears to the Court, as alleged in the indictment, that the whole purpose of transferring "title" to GT St. Louis was a scheme designed to avoid the payment of excise tax on the sale of cigarettes located in Kentucky. At oral argument, Defendant Bello argued

that his transporters license somehow exempted him from the excise tax requirement, but there is no evidence that the cigarettes in question were transported to GT St. Louis. The Court concludes there is evidence of the intent to deprive Kentucky of its property. Therefore, the Court finds that the government has alleged the elements of wire fraud.

Furthermore, "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity - - knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" is guilty of money laundering. 18 U.S.C. § 1956(a)(1)(B)(I). The unlawful activity in the Superseding Indictment is the conspiracy to commit wire fraud. As the Court has held that the government has alleged the elements of wire fraud, the dismissal of the money laundering charges is inappropriate.

Additionally, the Court rejects Defendant's argument that this case disrupts the importance of federal-state balance. Defendant Bello cited to United States v. Turner, in which the Sixth Circuit reversed the district court in a case involving the application of the federal mail fraud statute to a state election fraud case. 465 F.3d 667 (6th Cir. 2006). The Court concluded that the election fraud, and resulting deprivation of "intangible rights" did not constitute a deprivation of money or property as required under the mail fraud statute. Id. at 674. In contrast, as stated previously, the deprivation of taxes, is considered a property interest under the mail and wire fraud statutes. The Court finds the Sixth Circuit's reference to the federal-state balance limited to the state election fraud, and not applicable to this case in which there were allegedly multiple locations, both in and out of the state of Kentucky, used to further the tax evasion scheme.

Therefore, the Court denies Defendant Pedro Bello's motion to dismiss.

**B. Motion to Dismiss for Selective Prosecution and Vindictive Prosecution**

Defendant Juan Hernandez filed a motion to dismiss for selective prosecution and vindictive prosecution. In his motion, Defendant Hernandez alleges that Defendant Pedro Bello was speaking with the government regarding possible settlement of the charges in exchange for Defendant Pedro Bello's cooperation with a potential investigation of others. No agreement was made and Defendant Pedro Bello was indicted. Defendant Hernandez states that he and his wife, Defendant Caridad Bello, were indicted only after negotiations between Pedro Bello and the government "broke down." He states that the sole purpose of the Superseding Indictment against Hernandez and Caridad was to put pressure on Pedro Bello. Furthermore, Defendant Hernandez argues that the United States was aware of 28 wholesale companies in Illinois and Kentucky that were implicated as being involved in the invoice scheme. (Def. Hernandez' Mot. to Dismiss, 10 [DN 76].) According to Defendant Hernandez, these similarly situated non-Hispanic wholesalers were engaged in similar, if not even more serious conduct, and have not been prosecuted. He has requested a hearing in order to obtain additional discovery.

In response, the government states that Defendant Hernandez has not made the required showing that similarly situated individuals of a different race were not prosecuted. The government argues that Hernandez only alludes to a document that refers to the knowledge of other companies involved, but does not provide any specifics as to who those individuals are or their race. The United States also acknowledges that it is prosecuting at least two other people, who are Caucasion, for alleged conspiracies in cigarette tax fraud. Additionally, the government states that Defendant Hernandez is not entitled to discovery since he has only alleged unsupported assertions. As to the vindictive prosecution claim, the government states that charges brough as the result of failure of a plea bargaining process are not vindictive. (U.S. Response, 6 [DN 85] (citing United States v.

Suarez, 263 F.3d 468, 479 (6th Cir. 2001))).

The Attorney General and the United States are given broad discretion to enforce laws. See United States v. Armstrong, 517 U.S. 456, 464 (1996). However, the Supreme Court has held that a prosecutor's discretion is subject to constitutional constraints and "[o]ne of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (internal citations omitted). "To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent." United States v. Jones, 159 F.3d 969, 976 (6th Cir. 1998). In order to establish discriminatory effect, "the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted." Id. Discriminatory intent requires the claimant to "show that the prosecutorial policy was motivated by racial animus." Id.

While Defendant Hernandez claims he needs additional discovery, "in order for a defendant to obtain discovery in a selective prosecution case, there must be a showing of 'some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent.'" Jones, 159 F.3d at 978 (quoting Armstrong, 517 U.S. at 468). Defendant Hernandez has provided the affidavits of agents attached to search warrants, but does not point to evidence that establishes that the federal prosecutorial policy had a discriminatory effect as there is no evidence of the race of any other person allegedly involved in the scheme. There is also no evidence to show that the prosecutors were motivated by racial animus. The Court finds that Defendant Hernandez has not met the initial burden in order to warrant additional discovery or an evidentiary hearing, and his claim for selective prosecution must fail.

In order to prove a vindictive prosecution claim, the Sixth Circuit has required a claimant to demonstrate four elements: "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right." United States v. Suarez, 263 F.3d 468, 479 (6th Cir. 2001). As support of this claim, Defendant Hernandez reasons that because the government indicted him and Defendant Caridad Bello only after Defendant Pedro Bello refused to cooperate he has a sufficient basis to warrant an evidentiary hearing or dismissal of the Indictment. As the government points out, charges brought as the result of failure of the plea bargaining process are not vindictive. See Suarez, 263 F.3d at 479. Furthermore, the fact that Pedro Bello exercised a protected right of going to trial does not transfer to Defendant Hernandez. Charges were only first brought against Defendant Hernandez in the Superseding Indictment. He has yet to exercise a protected right that resulted unreasonable conduct of the prosecutor. Therefore, Defendant Hernandez cannot support a claim for vindictive prosecution and his motion to dismiss is denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Pedro Bello's motion to dismiss [DN 68] is **DENIED**; Defendant Juan Hernandez's motion to dismiss [DN 76] is **DENIED**; and Defendant Juan Hernandez's motion to adopt Co-Defendant's motion to dismiss [DN 77] is **DENIED as moot**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

May 13, 2013

cc: counsel of record